UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| SHELBY DON SENTERS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 17-76-DCR |
| ) | |
| V. ) | |
| ) | |
| NANCY A. BERRYHILL, Acting ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the cross-motions for summary judgment filed by Plaintiff Shelby Don Senters and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 9, 11] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by the plaintiff.

**I.**

Senters filed an application for a period of disability and DIB under Title II of the Social Security Act on March 19, 2013. He alleged a disability onset date of February 27, 2012. [*See* Administrative Transcript ("Tr."), 187-88.] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. 119-22, 124-26] Thereafter, an administrative hearing was held before ALJ Jonathan Sprague who subsequently determined that benefits should not be awarded. [Tr. 20-39] Senters then sought review by the Appeals Council, which was denied. [Tr. 1-6]. Senters has exhausted his administrative remedies and his case is ripe for review under 42 U.S.C. § 405(g).

Senters was sixty-seven years old at the time of the administrative hearing and sixty-three years old when his disability allegedly began. [Tr. 46] He has a high school education and past relevant work in the coal mining industry as a utility man and hoist engineer. [Tr. 47] He stopped working in February 2012 after being laid off when his employer shut down the mine where he was working.[1] [Tr. 47, 72]

Senters testified that he suffers from seizures and hip pain and sometimes experiences shortness of breath due to black lung. [Tr. 51-54, 61] He testified during the administrative hearing that has not had any seizures since being seen by a doctor. [Tr. 51] His seizures seem to be controlled with medication and he believed the last seizure occurred during 2009. [Tr. 51-52]

Senters' hip pain has bothered him for a couple of years, but he has not visited a doctor for the condition because, in his words, he does not want anybody "messing with it." [Tr. 52-54] He stated that the pain is aggravated if he does too much lifting, sits the wrong way, or walks too much. [Tr. 52-55] However, he stated that he is able to go grocery shopping, mow the lawn with a self-propelled walking mower (although he is stiff and tired afterward). He also helps out at his church on a volunteer basis (around four to five hours a day). [Tr. 57-61] Senters does not take any medication to manage the hip pain other than over the counter medications like Tylenol. [Tr. 53] He also testified that he sometimes experiences shortness of breath when he walks due to conditions associated with black lung disease. [Tr. 61]

---

[1] This is the same time as Senters' alleged disability onset date. The ALJ noted that this shows a potential financial gain in filing the disability claim. [Tr. 32; *see also* Tr. 72]

Senters was treated for seizures by Alam Khan, M.D., and other doctors at the Neurology Clinic of London. [Tr. 689-720, 985-1002] He was seen approximately every six months and, after 2009, examination notes generally indicate normal results. [Tr. 689-720, 985-1002] Senters was oriented in all spheres and had a normal range of motion in his extremities. [*See, e.g.*, Tr. 690-92] He did not appear to have issues with joint swelling, numbness, sleep disturbance, or depression. [*See, e.g.*, Tr. 693] Overall, his physical examination was within normal limits. [*See, e.g.*, Tr. 698]

Dr. Khan's treatment notes indicate that Senters had a seizure on March 17, 2009, and then another on July 13, 2009, when he was not taking his medications. [Tr. 690, 695] However, there is no record of any seizure occurring after that date. Treatment notes from February 28, 2012, state "no seizures in 3.5 years now," and notes from a follow up visit on September 4, 2012, state "no seizures in 4 years now." [Tr. 707, 709] Later records from the Neurology Clinic of London also reveal no seizures after 2009. Treatment notes from September 29, 2014, state "unsure when last seizure was greater than 3 years since seizure." [Tr. 994] Apparently interpreting this to mean that Senters' last seizure was three years prior to that visit, records from 2015 state that the last seizure was "4 years ago" and "4 ½ years ago." [Tr. 988, 991]

Contrary to the above records, Dr. Khan submitted a Residual Functional Capacity ("RFC") form indicating that Senters' last three seizures were in 2009, November 2013, and January 2014. [Tr. 949] He indicated that Senters would sometimes need to take unscheduled breaks during an eight hour working day, when he has seizures, and expressed

an opinion that Senters was incapable of even low stress jobs because "stress can bring on a seizure." [Tr. 952]

Consultative examiner Mary Allen Genthner, M.S., performed a psychometric battery test which indicated that Senters has below average intelligence but no functional impairment. [T. 904-09] According to Genthner, Senters can retain and follow simple instructions, perform simple repetitive tasks without special supervision, and recognize normal hazards and take appropriate precautions, with mild to moderate limitations. [Tr. 908-09] State agency medical consultants Michelle Butler Psy.D., and H. Thompson Prout, Ph.D., similarly stated that Senters can understand and remember routine simple to detailed tasks, sustain attention and effort on tasks that require minimal judgment for extended periods of two-hour segments, and relate adequately in object-focused settings. [Tr. 86-89, 106-08]

B.T. Westerfield, M.D., examined Senters and concluded that he suffers from simple coal workers' pneumoconiosis. [Tr. 958-973] However, Senters has no pulmonary impairment and no respiratory disability in Dr. Westerfield's opinion. [Tr. 958] Instead, he has normal pulmonary function, and maintains the breathing capacity to return to his previous coal mine employment, or could enjoy other work with equal energy requirements. [Tr. 958]

Consultative examiner David Winkle, M.D., examined Senters on September 9, 2013. He noted that Senters had a history of two seizures, which occurred in 2009, and that he complained of pain in his hip and knee, which bothers him when he squats or crawls. [Tr. 920] Dr. Winkle observed Senters moving around the examination room without using

any assistive device and with no apparent gait disturbance. [Tr. 922] Senters was able to get up and down from the exam table and in and out of his chair without difficulty or assistance. [Tr. 922] Dr. Winkle noted that, due to his back problems, Senters may be impaired with such things as heavy lifting and bending and stooping, although he should be able to lift and handle fifty pounds occasionally and twenty-five pounds frequently. [Tr. 922] He also expressed an opinion that, although prolonged walking may aggravate Senters' lower extremities, he "should be able to walk and stand at least four hours out of an eight-hour day." [Tr. 922]

State agency medical consultant Alex Guerrero, M.D., reviewed the record and gave great weight to Dr. Winkle's opinion that, based on his back impairment, Senters should be able to lift and handle fifty pounds occasionally and twenty-five pounds more frequently. [Tr. 109] However, he gave little weight to Dr. Winkle's opinion that Senters should be able to walk and stand at least four hours out of an eight hour day, instead concluding that Senters should be able to stand and walk for about six hours in an eight hour workday. [Tr. 109-10]

ALJ Sprague issued a decision on December 9, 2015, concluding that Senters was not disabled during the relevant time period. [Tr. 34] The ALJ determined that Senters had the following severe impairments: major motor seizures, degenerative disc disease, and borderline intellectual functioning. [Tr. 25] However, the ALJ found that Senters did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 25-26]

In reaching his conclusion, ALJ Sprague determined that Senters had the RFC to perform medium work. [Tr. 28] The ALJ found that Senters could lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently, and could sit, stand, and walk for six hours out of an eight hour workday, without limitation in his ability to climb ramps and stairs. [Tr. 28] He can frequently balance, stoop, kneel, crouch, and crawl, but should never climb ladders, ropes, and scaffolds, and should avoid all exposure to hazards. [Tr. 28] He can understand, remember, and follow instructions for simple routine tasks, and can sustain concentration, pace, and persistence, for two hour periods with scheduled breaks for an eight hour day. [Tr. 28] He can adapt to simple routine changes with normal guidance, and can interact occasionally supervisors, co-workers, and the public. [Tr. 28]

Based on these factual findings and the testimony provided by Senters and the vocational expert, ALJ Sprague concluded that Senters was unable to perform his past relevant work. [Tr. 32] However, based on testimony of the vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Senters could have performed, such as hand packager, linen room attendant, and laundry laborer. [Tr. 32-33] Thus, the ALJ concluded that Senters was not under a disability from the alleged onset date through the date last insured. [Tr. 33]

## II.

A "disability" is defined under the Social Security Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social

Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

If the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work under the fifth step of the analysis. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*,

312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

A. **The ALJ Provided Good Reasons for the Weight Given to Dr. Khan's Opinions.**

Senters contends that the ALJ erred by failing to provide good reasons for discounting the opinions of Dr. Khan. He argues that, although the ALJ gave Dr. Khan's opinion controlling weight, "very little of it was incorporated into the residual functional capacity given by the ALJ." [Record No. 9, p. 4] In Senters' view, "[i]t is inconsistent to give controlling weight to a doctor's opinion, yet reject pertinent parts and fail to use it in [the ALJ's decision], without adequate rationale or a reasoned basis for doing so." [*Id.*]

Because Dr. Khan was a treating physician, the ALJ was required to provide "good reasons" for the weight accorded to his opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).[2] The social security

---

[2] This regulation is now located at 20 C.F.R. § 404.1527(c)(2).

regulations require that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)).

The good reasons requirement confers a "substantial right" on claimants, and non-compliance is not excused simply because there is sufficient evidence in the record for the ALJ to discount the treating source's opinion. *Id.* at 546. However, failing to provide good reasons may be harmless error in certain circumstances, including when: (i) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (ii) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (iii) the Commissioner has met the goal of § 1527(d) even though he has not complied with the terms of the regulation. *Id.* at 547.

The ALJ meets the goal but not the terms of the regulation when the ALJ "indirectly attack[s] the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, see § 404.1527(d)(3)."[2] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). The critical inquiry here is not whether the ALJ did reject

---

[2] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

the treating physician's opinion, but whether the ALJ implicitly provided sufficient reasons for rejecting it. *Hall*, 148 F. App'x at 456.

The ALJ provided "good reasons" for the weight he gave to Dr. Khan's opinions in this case. First, he described the results of Dr. Khan's examinations, and explained that Dr. Khan's treatment notes were accorded "controlling weight." [Tr. 28] Then, in a separate paragraph, the ALJ addressed Dr. Khan's RFC form. [Tr. 28] The ALJ explained that he accorded "little weight" to Dr. Khan's RFC form, because the opinions Dr. Khan expressed there were not supported with relevant evidence and were inconsistent with the evidence that Senters had been seizure free since 2009.[3] [Tr. 28] As a result, Senters' statement in his motion for summary judgment that the ALJ gave Dr. Khan's opinion controlling weight is only partially correct. The ALJ expressly gave only little weight to some of Dr. Khan's opinions. It is not surprising that these opinions were not "incorporated into the residual functional capacity given by the ALJ," since they were given only little weight. [Record No. 9, p.4]

Further, the ALJ's decision to give little weight to Dr. Khan's RFC form is supported by substantial evidence. Dr. Khan incorrectly represented in his RFC form that Senters had seizures in November 2013 and January 2014. [Tr. 949] These representations are not supported by *any* evidence in the record. Indeed, the records from Dr. Khan's own neurology clinic and Senters' testimony at his administrative hearing clearly indicate that

---

[3] Also reducing the credibility of Dr. Khan's RFC is the fact that he misidentified Senters' sex, stating that Senters would need to take unscheduled breaks "when she has a seizure." [Tr. 952]

-10-

his last seizure was in 2009. [*See* Tr. 51-52, 690, 695, 707, 709, 988, 991.] The notes from Dr. Winkle's examination also state that Senters' last seizure was in 2009. [Tr. 920]

The fact that Senters has not had a seizure since 2009 undermines other opinions expressed in Dr. Khan's RFC form, such as that seizures would cause Senters to take unscheduled breaks during an eight hour work day, and that he was incapable of even "low stress" jobs because they might bring on a seizure. [Tr. 952] Thus, although the ALJ did not "directly attack" these statements as he did Dr. Khan's statements that Senters had seizures in 2013 and 2014, he "indirectly attacked" their supportability and consistency with the record as a whole by attacking their underlying factual predicate. *See Hall*, 148 F. App'x at 464. Accordingly, any error arising from the ALJ's relatively terse explanation for rejecting these opinions was harmless.

**B.    The ALJ's RFC Limitation Was Supported by Substantial Evidence.**

Senters next contends that the ALJ did not provide an adequate justification for concluding that he could sit, stand, and walk for six hours out of an eight hour workday. He argues that, because the ALJ accorded great weight to consultative examiner Dr. Winkle's opinion, he should have concluded that Senters was limited to walking and standing four hours a day based on Dr. Winkle's statement that Senters "should be able to walk and stand at least four hours out of an eight-hour day." [Tr. 922] However, Senters fails to mention that the ALJ also gave great weight to the opinion expressed state agency medical consultant Dr. Guerrero, who considered Dr. Winkle's opinion, but concluded that Senters should be able to stand and walk for about six hours in an eight hour workday. [Tr. 30, 109-10]

Because Dr. Winkle was not a treating physician, the ALJ was not required to provide "good reasons" for rejecting his opinion. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) ("[A]n ALJ need only explain its reasons for rejecting a treating source . . . . Accordingly, a claimant is entitled under the SSA only to reasons explaining the weight assigned to his treating sources, independent of the success of his disability benefits claim.") (citations omitted). Further, although "the opinions of nontreating sources are generally accorded more weight than nonexamining sources, it is not a per se error of law . . . for the ALJ to credit a nonexamining source over a nontreating source." *Id.* It is proper for the ALJ to consider the opinions of state agency medical consultants, such as Dr. Guerrero. *See* 20 C.F.R. § 404.1527(e). And because state agency consultants are considered experts in the Social Security disability programs, their opinions may be entitled to great weight if they are supported by the record evidence. *See* 20 C.F.R. § 416.1527(f)(2); SSR 96–6p, 1996 WL 374180 (July 2, 1996); *see also Hibbard v. Astrue*, 537 F. Supp. 2d 867 (E.D. Ky. 2008).

Although there is some tension between the opinions offered by Dr. Winkle and Dr. Guerrero, they do not flatly contradict each other. Dr. Winkle stated that Senters should be able to stand for *at least* four hours out of an eight-hour day, not *only* four hours out of an eight-hour day. [Tr. 922] Further, the ALJ pointed to evidence in the record which may have led him to credit Dr. Guerrero's opinion over the opinion expressed by Dr. Winkle. He noted that Senters' complaints were inconsistent with his activities of daily living, which included mowing the lawn and working for about four to five hours a day as a supervisor at his church. [Tr. 31] He also noted that there was scant objective medical

evidence regarding Senters' back and hip pain, revealing "only mild degenerative disease," and that Senters did not seek any medical treatment for it, taking only Tylenol, "which is a very conservative form of treatment." [Tr. 31-2]

Although the ALJ generally gave great weight to Dr. Winkle's opinion, he may have found that the scant objective evidence regarding Senters' back and hip pain weighed against finding that he could not stand or walk for more than four hours. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion"). He also may have found that Dr. Guerrero's opinion that Senters could stand, walk, and sit for about six hours was more consistent with Senters' activities of daily living and conservative treatment of his back pain. *See id.* § 404.1527(c)(4) ("Generally, more weight is given to opinions that are "more consistent . . . with the record as a whole").

In any event, the ALJ was not required to provide good reasons for rejecting Dr. Winkle's opinion. *See Norris*, 461 F. App'x at 439. The ALJ's decision was supported by substantial evidence, including the objective medical evidence, Dr. Guerrero's opinion, and Senters' activities of daily living. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citations omitted). Even if Dr. Winkle's opinion would have supported a different conclusion, that is not a sufficient reason to reverse the Commissioner's decision. *Id.* ("The findings of the Commissioner are not subject to reversal merely because there

exists in the record substantial evidence to support a different conclusion.") (citing *Her*, 203 F.3d at 389–90).

**IV**.

The ALJ provided adequate reasons for the weight given to Dr. Khan's opinions. Little weight was given to some of Dr. Khan's opinions because they were not supported by relevant medical evidence or the record as a whole. Likewise, the ALJ did not err by concluding that Senters could sit, stand, and walk for six hours out of an eight hour workday. Substantial evidence supports this conclusion, including Dr. Guerrero's opinion, the conservative form of treatment for Senters' hip pain, the objective medical evidence revealing "only mild degenerative disease," and Senters' activities of daily living. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 11] is **GRANTED**.

2. Plaintiff Shelby Don Senters' Motion for Summary Judgment [Record No. 9] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by a separate judgment entered this date.

This 20th day of October, 2017.



Signed By:
*Danny C. Reeves* DCR
United States District Judge